IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **MICHELLE A. CAMPBELL** | **PLAINTIFF** |
| v. | CIVIL ACTION NO. 2:19-cv-02706 |
| **CITY OF MEMPHIS, TENNESSEE** | **DEFENDANT** |
| | **JURY TRIAL DEMAND** |

## COMPLAINT

Plaintiff, MICHELLE A. CAMPBELL (Ms. Campbell), who formerly worked for Memphis Animal Services (MAS), files her Complaint and Jury Demand against Defendant, CITY OF MEMPHIS (City of Memphis), through the undersigned counsel. This is an action to recover actual damages for discrimination based upon race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. In support of this cause, the Plaintiff would show the Court the following:

## PARTIES

1. Plaintiff, Michelle Campbell, is an adult resident citizen of Shelby County, Tennessee. Ms. Campbell is a black female.

2. Defendant, City of Memphis, Tennessee, is a political subdivision of the State of Tennessee. It may be served with process upon its City Attorney, Bruce McMullen, Chief Legal Officer, 125 North Main Street, Room 336, Memphis, Tennessee 38103 or its Mayor, Jim Strickland, 125 North Main Street, Room 700, Memphis, Tennessee 38103.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and civil rights

jurisdiction under 28 U.S.C. § 1343, for a cause of action arising under the Title VII of The Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. 2000(e) and 42 U.S.C. § 1981. Out of an abundance of caution, this case is also authorized and instituted pursuant to 42 U.S.C. §1983. This Court has authority to award costs and attorney fees pursuant to 42 U.S.C. § 1988.

4. Venue is proper in this action pursuant to 28 U.S.C. § 1391 because the events or omissions giving rise to Plaintiff's claims occurred in Memphis, Shelby County, Tennessee, which is within the Western District of Tennessee, Western Division.

5. Plaintiff timely filed Charges of Discrimination, Charge Number 490-2018-01091 with the United States Equal Employment Opportunity Commission (EEOC) for race discrimination and retaliation on January 25, 2018. Exhibit A. Plaintiff received a Notice of Suit Rights for the corresponding charge from EEOC dated July 26, 2019. Exhibit B.

6. Plaintiff timely files this cause of action.

## STATEMENT OF FACTS AND CLAIMS

7. On or about February 6, 2013, Ms. Campbell was hired by the City as an Animal Control Officer (ACO).

8. Alexis Pugh (Pugh), a white female (WF), was appointed in May 2016 as Administrator of Memphis Animal Services.

9. Ms. Campbell worked with little to no disciplinary issues until Administrator Pugh was hired with Memphis Animal Services.

10. Upon assuming her position as Administrator of MAS, Ms. Pugh immediately hired a disproportionate number of white individuals to work at MAS.

11. Ms. Pugh hired Whitney VanZandt (WF) as Shelter Supervisor.

12. Ms. Pugh created a position for Katie Pemberton (WF) on December 12, 2016, as a Community Engagement Specialist.

13. Ms. Pugh hired Matthew Belue (WM) as Senior Animal Services Officer on September 6, 2016, then Pugh appointed him as Interim Field Supervisor.

14. Ms. Pugh hired Amanda Sutters (WF) as an Animal Control Officer on October 17, 2016.

15. Ms. Pugh promoted Shelby Bienz (WF) to an Animal Control Officer, despite her lack of experience.

16. Shelby Bienz used racial slurs, including the N-word, in conversations with MAS employees.

17. Ms. Pugh hired Vanessa Waites (WF) to fill a bid position as Intake Specialist despite Ms. Waites' lack of experience.

18. While Pugh made a series of new hires that were all white, after she became Administrator, she was also working to eliminate the black workers at MAS.

19. One of the first to deal with Pugh's racism was Travis Ollie (BM), whom Pugh fired.

20. Ms. Pugh suspended Sherrie Carter (BF) for four to five weeks.

21. Ms. Pugh also terminated Sherrie Carter, but Ms. Carter was reinstated as part of the internal appeals process.

22. Ms. Pugh terminated Brandon Boswell (BM), an Animal Care Technician.

23. Ms. Pugh suspended Tara Newsome (BF) for five days.

24. Ms. Pugh reprimanded Brandy Jackson (BF) and put her on a 90-day performance improvement plan.

25. Ivan Anderson (BM) asked Pugh for permission to leave work to seek treatment for an on the job injury. Pugh told Mr. Anderson that he could not go to his appointment, stating to him that he and his black co-workers were "always trying to leave work."

26. On or about January 21, 2017, an email from AgainstWhiteRacist@mail.com with the Subject: protest coming soon @MAS with content "You are running MAS as if it's a plantation…" was sent directly to Alexis Pugh.

27. The sender of the January 21, 2017, email was unknown.

28. Ms. Pugh received a second email on August 13, 2017, from citizen.concern@mail.com regarding "Subject: You."

29. According to Ms. Campbell's personnel file, on or about February 7, 2017, the Defendant began to place documentation of alleged discussions regarding Plaintiff's work.

30. Ms. Campbell was not aware of the alleged counseling reports in her personnel file until after the City had discriminated and retaliated against her.

31. The City knew or should have known of the propensity of Alexis Pugh to discriminate against black people and to retaliate against those who participated in protected activity by putting unverified allegations in employee files in an attempt to justify Pugh's actions.

32. It was not until Alexis Pugh became the Administrator and made her hierarchy predominantly white that Ms. Campbell began to receive any type of disciplinary action.

33. On or about March 11, 2017, Ms. Campbell received two separate disciplinary actions in the form of an Oral Warning and Written Reprimand for incidents that were not known to Ms. Campbell.

34. On or about April 14, 2017, Ms. Campbell received a Documentation of Counseling Session alleging a breach on performance expectations on clerical errors.

35. Alexis Pugh was concerned about the anonymous complaints and inquired with Debbie Banks, City Auditor, who responded to Pugh's question concerning the anonymity of the complainants on August 15, 2017, to let Pugh know that it did not matter that the complainant was anonymous and that the complainant did not have to be a City employee in order to begin the investigative process.

36. In addition to the messages regarding the treatment of black employees at MAS being sent to Pugh, the Mayor, Jim Strickland, and other high-ranking government officials with the City were either copied on the emails or made aware of them through public posts and the investigation the messages prompted.

37. On or about August 23, 2017, an administrative case was opened by the City of Memphis, Police Division, Inspectional Services Bureau, to investigate allegations and complaints regarding anonymous emails of animal abuse and employees being intimidated and discriminated by Memphis Animal Services Administrator, Alexis Pugh.

38. Statements from the employees of MAS were taken by Sergeant Audrey Cartwright as part of the administrative investigation into the complaints of discrimination and retaliation levied against Ms. Pugh.

39. Animal Control Officer Bradley Warren (BM) stated that he observed Pugh's racial bias through the favoritism Pugh showed towards Shelter Supervisor, VanZandt (WM) and other white MAS employees, including disciplinary infractions and assignments.

40. Officer Warren explained that black employees are reprimanded more harshly than white employees for the same or similar policy violations.

41. Employees Bradley Warren, Pamela Carter, Ivan Anderson, DeKeisha Tunstall, and Stacy Miller stated that they believe the employees are treated or disciplined differently

because of their race at MAS.

42. ASO Amanda Sutter acknowledged that MAS is racially divided.

43. Terra Proctor and Adrian Dest observed that some employees are generally treated with favoritism compared to others.

44. MAS employees feel that Administrator Pugh reprimands employees based on their race and in retaliation for complaints Pugh knew to have been made about her or her direct reports as well as her belief that certain employees were complaining.

45. On or about November 21, 2017, Ms. Campbell filed a grievance reporting that during a meeting with Plaintiff, Ms. Sutter, Matthew Belue and Bradley Warren, Ms. Sutter became irate, cursing, slamming doors and asking Ms. Campbell to "Go ahead and hit me, just hit me I don't care!"

46. The purpose of the meeting that was the subject Ms. Campbell's grievance on November 21, 2017, was to discuss the manner in which Ms. Sutter was dealing with Ms. Campbell.

47. On the same date at the same time of Ms. Sutter's outburst towards Ms. Campbell, Administrator Pugh came to scene and was apprised of the situation with Ms. Sutter and Ms. Campbell.

48. Ms. Sutter was not counseled or written up for her witnessed behavior.

49. On November 30, 2017, Ms. Campbell filed a union represented employee grievance against Officer Sutter, Supervisor Belue and Administrator Pugh requesting an investigation into the claim of fair and equal treatment and unequal discipline based on race which was signed off by 8 MAS employees.

50. On or about November 25, 2017, Ms. Campbell allegedly did not go to work or did

not answer calls from work.

51. On November 25, 2017, Ms. Campbell was at home and available to answer calls as required by her job duties.

52. The City made no attempt to reach Plaintiff on her cellular phone or her radio as they would with other ASOs.

53. Ms. Campbell noticed a change in the way she was treated soon after she filed her November 21, 2017, complaint about Ms. Sutter.

54. On or about December 2, 2017, Ms. Campbell arrived on the scene of an injured dog call on I-240/ Airways (complaint number 17-022608).

55. The City cites the December 2, 2017, injured dog call to be part of the alleged basis to fire Ms. Campbell.

56. On or about December 6, 2017, Ms. Campbell allegedly had an incident with guinea pigs (complaint number 17-022711).

57. Ms. Campbell with Animal Service Officer (ASO) Warren arrived on the scene where there was a complaint of a puppy and 2 guinea pigs that were reported to be abandoned and Ms. Campbell handled the situation in accordance with her training with the assistance of ASO Warren.

58. On or about December 7, 2017, Ms. Campbell returned to the scene to follow up on the investigation of suspected abandoned guinea pigs.

59. With the assistance of ASO Warren and ASO Little, Ms. Campbell impounded the three animals after talking to Code Enforcement.

60. On or about December 8, 2017, Ms. Campbell talked to Supervisor VanZandt about the impounded animals and that the guinea pigs looked as if they required further intervention and

none was taken.

61. On December 6, 2017, Administrator Pugh learns of the injured dog incident that occurred on December 2, 2017.

62. On December 8, 2017, Field Supervisor Belue called and spoke to Code Enforcement Inspector James who stated that he requested MAS assistance and confirmed that the animals had no food or water and the guinea pigs looked malnourished.

63. On December 8, 2017, and December 12, 2017, Plaintiff's supervisors' instituted investigations into ACO Campbell's handling of the guinea pigs.

64. On December 11, 2017, Ms. Campbell allegedly did not have the Defendant's vehicle for standby.

65. On December 13, 2017, Field Supervisor Belue rejected Ms. Campbell's November 30, 2017, grievance.

66. On December 15, 2017, Ms. Campbell received an oral reprimand for the guinea pigs in retaliation for her protected activity.

67. ASO Warren and ASO Little, who were also involved with the guinea pigs, did not receive any disciplinary action regarding the handling of the guinea pigs; but neither had filed a grievance against Administrator Pugh or Supervisor Belue.

68. On or about December 15, 2017, Ms. Campbell filed a grievance against her supervisor Matthew Belue, coworker Amanda Sutter, and Administrator Alexis Pugh.

69. On December 15, 2017, Ms. Campbell received a Notice of Charges and Fact-Finding Hearing for the November 25, 2017, alleged infraction of not showing up for work and the December 11, 2017, not having the Defendant's vehicle ready, even though it was in MAS parking lot.

70. On or about December 15, 2017, Ms. Campbell received a second Notice of Charges and Fact-Finding Hearing for the injured dog incident on December 2, 2017.

71. On December 15, 2017, Ms. Campbell was issued three reprimands for issues that occurred over a month prior, before and contemporaneously with her grievances.

72. Michael Blalock (WM) had left work without permission and was not reprimanded, but Plaintiff received discipline for allegedly being unavailable.

73. On December 29, 2017, the Defendant had its first hearing against Ms. Campbell on the disciplinary actions and Ms. Campbell was given a 1-day suspension that was to occur on January 24, 2018.

74. On or about December, 29, 2017, the Defendant immediately had a second hearing regarding Ms. Campbell concerning the December 2, 2017, incident of the injured dog.

75. At some point thereafter the City of Memphis decided that Ms. Campbell was terminated effective January 25, 2018.

76. ASO Little was also on the scene of December 2, 2017, incident but was not terminated.

77. On January 6, 2018, Ms. Campbell filed an internal EEO against Belue and Pugh for retaliation.

78. On or about January 20, 2018, Ms. Campbell picked up an injured dog previously caught in barbwire from Animal Emergency on Central Avenue and brought the dog back to the shelter by 12PM CST.

79. Ms. Campbell sought assistance from coworkers to help her get the growling, injured dog off of the Defendant's truck.

80. Ms. Campbell sought assistance from her supervisor, Jeremiah Parsons, but he was

busy and all other animal control officers were in the field.

81. Clinic technician, Bree Ridgell and clerk Audrey Davis went to the sally port to get the animal off of the truck and while in process to remove the injured dog, Supervisor Whitney VanZandt (WF) came to the sally port and told Ms. Campbell that she was not to go and get another MAS worker from a different department to assist her in anything.

82. Ms. Campbell asked Supervisor VanZandt if there was a policy against seeking assistance on the job.

83. Supervisor VanZandt stated in a threatening and belittling manner in the presence of coworkers to Ms. Campbell "you are more than welcome to go look for it in the policy."

84. On January 20, 2018, Ms. Campbell amended her internal complaint outlining the retaliatory exchange with Supervisor VanZandt to EEO.

85. In Ms. Campbell's January 20, 2018 complaint, she stated that she had unfair treatment concerns and feels retaliated against and discriminated against on a constant basis.

86. On January 22, 2018, Gregory Bethel, Office of Equity, Diversity and Inclusion (EDI) Coordinator sent Ms. Campbell an email stating he wanted to speak to her about her concerns after she reached out to COO, Doug McGowen.

87. On January 23, 2018, Ms. Campbell had an interview at the EDI office at 10AM about her EEO complaint with investigator Martha Walker.

88. On January 23, 2018, on the same day as her EDI interview Ms. Campbell was terminated from the City of Memphis Animal Shelter.

89. On January 23, 2018, Ms. Campbell was terminated in retaliation for undertaking protected activity and because of her race.

90. Ms. Campbell was unlawfully terminated due to her race and in retaliation of her

10

engaging in protected activity.

91. Plaintiff has lost wages, suffered mental anxiety, stress, humiliation, and loss of valuable benefits and enjoyment of life.

92. The Defendant is liable to Plaintiff under 42 U.S.C. § 1981 and the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.*

93. Defendant's actions constitute intentional discrimination on the basis of race (black) in violation of 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981 based on facts including, but not limited to, Plaintiff is black and was treated less favorably than her white counterparts; received unequal disciplinary actions; her internal complaints about race and retaliation went unanswered; and was subjected to racial comments and exposed to racial bigotry.

94. Further, Defendant retaliated against Plaintiff in violation of the Title VII and 42 U.S.C. § 1981 by subjecting Plaintiff to multiple disciplinary infractions that similarly situated white employees were not subjected to; by demeaning Plaintiff in front of others; by disregarding Plaintiff's complaints of racism and bigotry, all due to her complaints of racism and retaliation, ultimately ending in her termination.

95. The unlawful actions of the Defendants complained about above were intentional, malicious, and taken in reckless disregard of the statutory rights of the Plaintiff.

## **REQUEST FOR RELIEF**

Plaintiff sustained monetary and non-monetary damages as a result of Defendant's illegal conduct, and Ms. Campbell demands such legal and equitable relief as will effectuate the purposes of 42 U.S.C. § 1981 and the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., including but not limited to, the following:

A. Back wages and reinstatement;

B. Future wages in lieu of reinstatement;

C. Compensatory damages;

D. Attorney fees;

E. Costs and expenses; and

F. Such further relief as is deemed just and proper.

Plaintiff demands a jury be empaneled to determine the damages owed to Plaintiff for Defendant's violation of the law and for reasonable attorney fees.

THIS the 16th day of October, 2019.

Respectfully submitted,
MICHELLE A. CAMPBELL, PLAINTIFF

BY: */s/ Tressa V. Johnson*
Tressa V. Johnson BPR #26401
Kristy L. Bennett BPR #30016
JOHNSON AND BENNETT, PLLC
1331 Union Avenue, Suite 1226
Memphis, TN 38104
(901) 402-6515 (direct)
(901) 462-8629 (fax)
tressa@myjbfirm.com
kristy@myjbfirm.com